UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANTHONY HADLEY,

               Petitioner,                                Hon. Gordon J. Quist

v.                                                Case No. 1:12-CV-692

MARY BERGHUIS,

               Respondent.

_____/


**REPORT AND RECOMMENDATION**

This matter is before the Court on Hadley's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Hadley's petition be **denied**.


**BACKGROUND**

As a result of events which occurred on April 29, 2009, Petitioner was charged with the following crimes: (1) armed robbery (two counts), (2) assault with intent to murder, (3) being a felon in possession of a firearm, (4) possessing a firearm during the commission of a felony, and (5) being an habitual felon with two prior felony convictions.  (Dkt. #18, 26).

The relevant events are as follows.  Petitioner, while armed with a pistol, entered a Michigan Gas Utilities facility.  (Dkt. #18).  After entering the building, Petitioner "waved" the

1

pistol at Kerriann Robertson after which he "took the money out [of] the cash register." (Dkt. #18). Petitioner immediately exited the building and began to flee. (Dkt. #18). Petitioner subsequently encountered Keith Green, an off-duty police officer, who attempted to apprehend Petitioner. (Dkt. #19-20). Petitioner resisted and threatened to shoot Green. (Dkt. #20).

Petitioner agreed to plead guilty to one count of armed robbery, no contest to the other count of armed robbery, and guilty to being an habitual offender with one prior felony conviction, in return for which the other charges were dismissed. (Dkt. #18). Petitioner was sentenced to serve 200-480 months in prison. (Dkt. #19).

Arguing that his sentencing guidelines score had been miscalculated, Petitioner later moved in the trial court to be re-sentenced. (Dkt. #20). Petitioner's motion was denied. (Dkt. #20). Petitioner subsequently moved in the Michigan Court of Appeals for leave to appeal, asserting the following claims:

I.    Defendant's sentences were invalid because they were based on inaccurate information, i.e., improper scoring of the legislatively imposed sentencing guidelines, use of an incorrect burden of proof, and insufficient facts; therefore, his due process rights were violated.

II.    Correctly scoring the guidelines would require resentencing.

III.    Defendant received ineffective assistance of trial counsel.

IV.    The armed robbery conviction for Count V should be vacated because it is part of a continuing offense resulting from Count I.

The Michigan Court of Appeals denied Petitioner leave to appeal "for lack of merit in the grounds presented." *People v. Hadley*, Case No. 301180, Order (Mich. Ct. App., Jan. 5,

2

2011).  Asserting the same issues, Petitioner appealed the matter to the Michigan Supreme Court which denied Petitioner leave to appeal.  *People v. Hadley*, Case No. 142633, Order (Mich., May 24, 2011).

On October 27, 2011, Petitioner moved in the trial court for relief from judgment asserting several claims that he failed to advance in his direct appeal.  The trial court denied Petitioner's motion on the ground that Petitioner "failed to show good cause and actual prejudice" as required by Michigan Court Rule 6.508(D)(3) to assert claims which could have been asserted on direct appeal.  (Dkt. #26).  Petitioner moved in the Michigan Court of Appeals for leave to appeal this determination.  Petitioner's motion was "denied for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  (Dkt. #23).  Petitioner did not appeal this determination to the Michigan Supreme Court.  (Dkt. #24).  Petitioner initiated the present matter on May 3, 2012, asserting claims I-IV identified above.

## STANDARD OF REVIEW

Hadley's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.  The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

3

the United States, or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court

4

decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."

5

*Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

### I.        Invalid Sentence

Petitioner asserts two claims that his sentences are "invalid" and, therefore, merit habeas relief. Petitioner asserts that the offense variables used to calculate his sentencing guidelines

score were miscalculated.  Petitioner also asserts that his sentence is invalid because it was premised upon factual findings made by the judge instead of the jury.

A.      Scoring of the Offense Variables

Petitioner claims that he is entitled to relief because the trial court incorrectly scored several of the offense variables resulting in an inaccurate sentencing guidelines score.  However, because this claim implicates only Michigan law it is not cognizable in this proceeding.  *See* 28 U.S.C. § 2254(a) (the federal courts can only consider habeas claims alleging "violation of the Constitution, laws, or treaties of the United States"); *Coleman v. Curtin*, 425 Fed. Appx. 483, 484-85 (6th Cir., June 6, 2011) (claims that a state court improperly calculated the relevant offense variables is not cognizable in a federal habeas proceeding).  Accordingly, this claim presents no issue on which habeas relief may be granted.  Likewise, Petitioner's claim that he must be re-sentenced so that his guidelines score can be properly calculated is without merit.

B.      Right to Jury Trial

In *Blakely v. Washington*, 542 U.S. 296 (2004), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id.* at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).  Petitioner asserts that his sentence violates this rule because the trial judge relied upon facts which were neither admitted nor proven beyond a reasonable doubt when scoring several of the offense variables.

In *Blakely*, the defendant pleaded guilty to second degree kidnaping involving

domestic violence and use of a firearm. *Blakely*, 542 U.S. at 298-99. In so doing, Blakely admitted "the elements of second-degree kidnaping and the domestic-violence and firearm allegations, but no other relevant facts." *Id.* at 299. Washington law provided that the "standard range" to which a defendant, convicted of this particular offense, could be sentenced was 49-53 months. However, the sentencing court was permitted to impose a sentence in excess of the "standard range" if it found "substantial and compelling reasons justifying an exceptional sentence." Before imposing an "exceptional sentence," the sentencing court was required to "set forth findings of fact and conclusions of law supporting it." *Id.*

The State recommended that Blakely receive a "standard range" sentence of 49-53 months. *Id.* at 300. The sentencing court rejected this recommendation, however, and, finding that Blakely acted with "deliberate cruelty," imposed an "exceptional" sentence of 90 months. *Id.* at 300-01. As the *Blakely* Court recognized, under Washington law, the court "could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea," but instead could do so only based on the court's additional determination that Blakely acted with "deliberate cruelty." *Id.* at 304. The Court held, therefore, that this sentence violated Blakely's Sixth Amendment right to trial by jury because it was predicated on facts that were neither admitted by Blakely nor found by a jury. *Id.* at 301-05.

The *Blakely* Court, however, made clear that its holding applied only to "determinate-sentencing schemes" such as that employed by the State of Washington. *Id.* at 308-09. The Court recognized that *indeterminate* sentencing schemes do not run afoul of the Constitution because while such schemes may sanction "judicial discretion" in sentencing, they do not accomplish such "at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the

8

penalty." *Id.* at 308-09.  As the Court recognized:

> Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion.  But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence - and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.  In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail.  In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence - and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

*Id.* at 309.[1]

As is well recognized, the State of Michigan employs an indeterminate sentencing scheme.  *See, e.g., Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010); *Deatrick v. Sherry*, 451 Fed. Appx. 562, 564-65 (6th Cir., Dec. 21, 2011).

Petitioner was convicted of two counts of Armed Robbery as well as being an habitual felon.  Under Michigan law, conviction for Armed Robbery is punishable by imprisonment "for life or for any term of years."  Mich. Comp. Laws § 750.529.  Petitioner received a sentence of 200-480 months in prison which is entirely consistent with Michigan law.  Thus, when Petitioner committed his crimes he knew that he could possibly receive a sentence of this magnitude.  Because Petitioner received a sentence within the range permitted by Michigan law as a result of his convictions, any additional fact-finding in which the trial court may have engaged did not violate

---

[1]  The holding in *Blakely* and *Apprendi* was subsequently reaffirmed in *Cunningham v. California*, 549 U.S. 270 (2007).  As the Court stated, the "Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant."  *Id.* at 274-75 (citations omitted).  The Court also reiterated, however, that in this context the "relevant statutory maximum" is "not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings."  *Id.* at 275 (citation omitted).

Petitioner's rights under the Sixth Amendment or the authority discussed above.

The Michigan Court of Appeals rejected these claims "for lack or merit." In light of the authority and evidence identified above, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, these claims raise no issue upon which habeas relief may be granted.

## II.              Ineffective Assistance of Trial Counsel

Petitioner next asserts that he is entitled to relief because his trial counsel failed to provide constitutionally adequate representation. Specifically, Petitioner asserts that competent counsel would have secured for him a more favorable sentence. The Court is not persuaded.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411 (2009)). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's

allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

      As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the Supreme Court recently concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (internal citations omitted).

      Petitioner faults his trial attorney for failing to object to the scoring of his sentencing guidelines score. Specifically, Petitioner asserts that counsel should have objected to the scoring of

11

Offense Variables, 1, 3, 9, and 12, as well as Prior Record Variable 7.  As discussed below, Petitioner cannot demonstrate that counsel's performance in this regard was deficient or, even if counsel's performance was deficient, that he was prejudiced thereby.

### A.    Counsel's Performance was not Deficient

### 1.    Offense Variables 3, 9, and 12

A review of the sentencing transcript reveals that counsel did, in fact, object to the scoring of Offense Variables 3, 9, and 12.  (Dkt. #19).  Thus, Petitioner's argument that counsel failed to object to the scoring of these offense variables falls short.

### 2.    Offense Variable 1

While counsel did not object to the scoring of Offense Variable 1, a review of such reveals that it was properly scored.  Offense Variable 1 concerns the "aggravated use of a weapon" during the commission of a crime.  Mich. Comp. Laws § 777.31.  Petitioner asserts that this offense variable was scored 15 points which correlates to a finding that he employed a firearm which "was pointed at or toward a victim." *Id.*  During his plea proceeding, Petitioner acknowledged that during the commission of his crimes he "waved" a pistol at one of the victims.  (Dkt. #19 at 15).  The Court, therefore, fails to discern any basis for an objection to the scoring of this offense variable.  Thus, Petitioner cannot establish that counsel's performance in this regard was deficient.

### 3.    Prior Record Variable 7

Again, while counsel did not object to this particular item, a review of the record

reveals that it was properly scored. Prior Record Variable 7 concerns "subsequent or concurrent felony convictions." Mich. Comp Laws § 777.57. Petitioner asserts that he was scored 10 points for this item which correlates to a finding that he "has 1 subsequent or concurrent conviction." *Id.* With respect to the events in question, Petitioner was convicted of two separate felonies. Thus, as to each of Petitioner's convictions he was also convicted of 1 "concurrent conviction." Accordingly, this variable was properly scored 10 points. *See, e.g., People v. Hendrix*, 2013 WL 5763047 at *4-5 (Mich. Ct. App., Oct. 24. 2013).

### B. Petitioner was not Prejudiced by Counsel's Performance

Even if the Court assumes that counsel's performance was deficient, the result would be the same because Petitioner cannot demonstrate that there exists a reasonable probability that, but for counsel's errors, he would have received a more favorable sentence. *See, e.g., Stumpf v. Robinson*, 722 F.3d 739, 753-54 (6th Cir. 2013) (to prevail on a claim that counsel rendered ineffective assistance at sentencing, petitioner must demonstrate that there exists a reasonable probability that absent counsel's errors he would have received a different sentence). The guidelines appear to have had little significance in this matter, as the trial judge imposed on Petitioner a sentence well in excess of the allegedly miscalculated guideline range on the ground that Petitioner was a "violent person" with a history of violent criminal behavior. (Dkt. #19). Given such, it does not appear likely that even had counsel advanced the arguments Petitioner identifies herein that he would have received a different sentence.

The Michigan Court of Appeals rejected this claim "for lack or merit." In light of the authority and evidence identified above, the Court concludes that this decision is neither contrary

13

to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

III.        **Double Jeopardy**

As noted above, Petitioner was charged with two counts of armed robbery, one as a result of his conduct toward Kerriann Robertson and another resulting from his interaction with Keith Green.  Petitioner claims that this second armed robbery conviction "should be vacated because it is part of a continuing offense resulting from" his conduct toward Kerriann Robertson. Petitioner asserts that to have convicted him of two crimes resulting from one continuous act violates his right not to be put in jeopardy more than once for the same crime.  As discussed below, however, Petitioner has waived this particular claim.

A guilty plea "is more than a confession which admits that the accused did various acts," but rather constitutes an "admission that he committed the crime charged against him." *United States v. Broce*, 488 U.S. 563, 570 (1989) (citations omitted).  By entering a guilty plea, "the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *Id.*  Thus, "[j]ust as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes." *Id.*

Because "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence," where a judgment of conviction upon a guilty plea has become final and the individual initiates a

collateral attack, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *Id.* at 569. If the guilty plea was counseled and voluntary, the general rule is the such "foreclose[s] the collateral attack." This general rule applies to a collateral attack asserting violation of the Double Jeopardy Clause. *Id.* Thus, the question becomes whether Petitioner's guilty plea was counseled and voluntary.

By pleading guilty a criminal defendant surrenders several important constitutional rights, including (a) the privilege against compelled self-incrimination; (b) the right to trial by jury; and (c) the right to confront one's accusers. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). To ensure that a criminal defendant is not improperly deprived of these (and other) rights, to be valid a guilty plea must be made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

The *Boykin* Court identified certain rights (identified immediately above) which a criminal defendant waives by pleading guilty. While the *Boykin* Court made clear that waiver of these (and other) rights cannot be assumed, the Court did not hold that a guilty plea is valid only where a criminal defendant was first notified as to each and every right he would be waiving by pleading guilty. *Boykin*, 395 U.S. at 243-44. In fact, less than one year after its *Boykin* decision the Supreme Court, in *Brady v. United States*, 397 U.S. 742 (1970), upheld the validity of a guilty plea even though the defendant had not been specifically advised of the rights identified by the *Boykin* Court. *Id.* at 743-58. With respect to its *Boykin* decision, the Court clarified its significance stating that "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.*

15

at 747 n.4.

Accordingly, as other courts have since recognized, neither *Boykin* nor any other Supreme Court authority requires that a criminal defendant be specifically advised of any particular rights before his guilty plea can be deemed constitutionally valid. *See, e.g., Threadgill v. Galaza*, 2006 WL 2084165 at *3 (E.D. Cal., July 25, 2006) ("specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea;" if the "record demonstrates that a guilty plea is knowing and voluntary, no particular ritual or showing on the record is required"); *United States v. Toles*, 1992 WL 129284 at *3 (9th Cir., June 4, 1992) ("*Boykin* does not require that the trial judge specifically list each right waived by a defendant who pleads guilty"); *Carter v. Brooks*, 2001 WL 169584 at *6-7 (D. Conn., Feb. 13, 2001) (the Supreme Court has "in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea" and "a guilty plea will not be invalidated simply because of the district court's failure. . .to enumerate one or more of the rights waived by the defendant as the result of such a plea"); *United States v. Smith*, 1990 WL 92601 at *2 (9th Cir., July 5, 1990) (the standard is not whether the trial judge specifically articulated certain rights, but whether "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

Accordingly, the relevant question is not whether the trial judge specifically articulated or identified for Petitioner a list of the various rights he would be surrendering by pleading guilty. Rather, as noted above, the question is whether Petitioner's decision to plead guilty was made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." The plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Wilkerson v. Jones*, 109 Fed. Appx.

16

22, 23 (6th Cir., Aug. 6, 2004) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Determining whether a guilty plea satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

At the plea hearing, the trial judge questioned Petitioner regarding his decision to plead guilty. (Dkt. #18). During this exchange, Petitioner acknowledged that he received, understood, and signed an Advice of Rights form which detailed that, by pleading guilty, Petitioner would be surrendering the following rights: (1) to a jury trial; (2) to be presumed innocent until proven guilty beyond a reasonable doubt; (3) to have witnesses against him appear at trial; (4) to question the witnesses against him; (5) to have the court order the appearance of any witnesses in his behalf; (6) to testify in his own behalf if he so chooses; (7) to remain silent during the trial; and (8) to not have any such silence used against him.[2]   The trial judge explained to Petitioner the charges he faced and the possible penalty for each. Petitioner acknowledged that his decision to plead guilty was not the result of threats, coercion, or promises other than those contained in the plea agreement. Petitioner acknowledged that he understood the terms of the plea agreement.

Considering the totality of the circumstances, the Court finds that Petitioner's guilty plea was made voluntarily, knowingly, and intelligently. In light of such, and the authority discussed above, the Court further finds that Petitioner, by virtue of his guilty plea, has waived his double jeopardy claim. The Michigan Court of Appeals rejected this claim "for lack or merit." In light of the authority and evidence identified above, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this

---

[2]   The Advice of Rights form that Petitioner received and signed has been submitted as part of the record. (Dkt. #27).

decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly, the undersigned recommends that Hadley's petition for writ of habeas corpus be **denied**.  The undersigned further recommends that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  June 20, 2014                    /s/ Ellen S. Carmody
                                        ELLEN S. CARMODY
                                        United States Magistrate Judge